Filed 9/11/24  P. v. Tellechea CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW RYAN TELLECHEA,<br><br>    Defendant and Appellant. | D081978<br><br><br>(Super. Ct. No. SCD274469) |


APPEAL from a judgment of the Superior Court of San Diego County, Steven E. Stone, Judge.  Affirmed.

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric Swenson and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

Matthew Ryan Tellechea appeals a judgment after a jury convicted him on nine criminal counts, including solicitation to commit perjury (Pen. Code,[1] § 653f, subd. (a)). On appeal, he contends that substantial evidence does not support his conviction for solicitation to commit perjury. As explained below, we disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In late 2018, while Tellechea and Nicholas E. (Nick) were in local custody together, Tellechea told Nick and other inmates about the criminal charges filed against him and his versions of the underlying facts. In particular, he told Nick about a May 23, 2018 incident at a Rite Aid store in Ocean Beach during which he and his twin brother, Michael, fought with and hit a man inside the store. Tellechea asked Nick to help him out by testifying on his behalf at his trial on the assault charge. He asked Nick to testify that he was present at the Rite Aid and witnessed the incident and testify that Tellechea and his brother did not do anything wrong. Tellechea drew a map showing where the incident occurred. He also wrote down on a piece of paper exactly what he wanted Nick's testimony to be (i.e., a script). Tellechea went over and over the story that he wanted Nick to give at trial. Tellechea gave Nick the map and script for his testimony. Tellechea asked Nick to contact his defense attorney and investigator on his release from custody and gave him their telephone numbers. He also told Nick that his father would give him money for testifying.

However, when Tellechea gave him the map and script, Nick did not agree, and never intended, to testify on Tellechea's behalf. Nick was not present during the incident and was, in fact, in Tijuana that day. Although Nick took the map and script with him on his release from custody in late

---

[1]     All statutory references are to the Penal Code.

November 2018, he did not believe anything that Tellechea had told him about the incident, and he did not want to get in trouble if he testified as Tellechea wanted him to.

After his release from custody, Nick received a letter from Tellechea expressing his frustration that he had not yet contacted his attorney or investigator. Tellechea's mother also called Nick and asked him whether he had contacted Tellechea's investigators. When he replied that he had not, she asked him to do so. In April 2019, an investigator for the district attorney's office contacted Nick. Nick told him about his jail cell interactions with Tellechea and he gave him Tellechea's map and script.

A grand jury issued an indictment charging Tellechea with 13 criminal counts, including solicitation to commit perjury (§ 653f, subd. (a)) (count 12). At his jury trial, Nick testified substantially as described above. In particular, Nick identified photographs of the map and script that Tellechea had given him in jail and the court admitted them in evidence as exhibits 85 and 86. Nick read the language of Tellechea's script (exh. 85) for the jury in its entirety, as follows:

> "On or about May 23rd I decided to take my son to the beach to play. We stopped at a coffee[/]doughnut[/]bagel shop for coffee, juice and doughnuts. As my son and I were leaving the business, I heard loud cussing and screaming across the intersection.

> "I heard honking and watched a man yelling at a SUV pulling into Rite Aid. The man in the SUV yelled to the man to get out of the street, the man that was yelling at the north and south traffic and flipping the cars the middle finger. The upset man walked through the intersection towards the Rite Aid parking lot towards the Tellechea brothers screaming, I will kill you, motherfucker. You almost hit me.

3

"I noticed Matthew and Michael get out of the Range Rover, face the man yelling to . . . both brothers, One on one I will kill you. What's up, motherfuckers. Michael and Matthew walked five to four feet towards the man approaching the Tellechea brothers. Michael Tellechea yelled at the upset man, What did you say? The man said, I will kill you, bitch. Michael lifted his shirt up and said, Someone already tried. And Michael showed him the injuries from the attempted murder on himself that already had been done to him.

"Matthew grabbed Mikey by his arm and told the man yelling to fuck off and leave him and his brother alone. The man was dancing around like a boxer in a fight saying, Come on, motherfucker. One on one I will kill you. Matthew told the man to fuck off and walk away. Matthew grabbed Michael by the arm and walked to the Rite Aid, and the man yelling walked towards the ocean. The brothers walked to the entrance of the Rite Aid, and I yelled to the brothers, Hey, you guys okay? Both brothers said yes to me and said hello to me and my son and entered the store."

In his defense, Tellechea presented, among other things, the testimony of Caesar F. who was, at times, a cell mate of Tellechea and Nick. Caesar testified that when Tellechea first began talking about the Rite Aid incident, Nick volunteered that he was there, saw the incident, and described it to Tellechea. Caesar further testified that Tellechea then gave Nick a piece of paper and had Nick draw a map of the Rite Aid area. Tellechea asked Nick to contact his attorney when he was released from jail and tell him that he could be a potential witness at his trial. Prior to Caesar's release from jail, Tellechea gave him a piece of paper with his father's name and telephone number on it and asked Caesar to contact him. After his release in 2019, Caesar contacted Tellechea's father who arranged a job interview for Caesar with a company where at the time of trial he (Caesar) had been working full-time for three years.

The jury returned a verdict finding Tellechea guilty of nine offenses, including the solicitation to commit perjury offense. The court sentenced him to a total term of seven years in prison and ran his sentence consecutive to a 10-year eight-month sentence imposed in his previous criminal case (San Diego County Superior Court case No. SCD277475). Tellechea appealed the judgment against him.

DISCUSSION

I

*Solicitation to Commit Perjury Generally and Standard of Review*

Section 653f, subdivision (a) provides: "Every person who, with the intent that the crime be committed, solicits another to . . . commit or join in the commission of . . . perjury . . . shall be punished . . . ." (See also CALCRIM No. 441 [elements for solicitation of crime under § 653f].) Under section 118, subdivision (a), "perjury" is committed when a "person who, having taken an oath that he or she will testify . . . before any competent tribunal . . . , in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false . . . ." (See also CALCRIM No. 2640; *Cabe v. Superior Court* (1998) 63 Cal.App.4th 732, 735 (*Cabe*); *People v. Howard* (1993) 17 Cal.App.4th 999, 1004 (*Howard*) [elements of perjury are "a willful statement, under oath, of any material matter which the witness knows to be false"].)

When an appellant challenges a judgment for a lack of substantial evidence to support it, we apply the substantial evidence standard of review. (*People v. Young* (2005) 34 Cal.4th 1149, 1180 (*Young*).) Applying that standard of review, we determine "whether, on review of the entire record in the light most favorable to the judgment, any rational trier of fact could have

5

found the elements of the offense beyond a reasonable doubt." (*Ibid*.) Substantial evidence must be "evidence which is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) In determining whether there is substantial evidence to support a judgment, we do not reweigh the evidence or redetermine the credibility of witnesses; rather, we decide whether the evidence and reasonable inferences therefrom support the trier of fact's findings. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890 (*Covarrubias*); *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*).) Nevertheless, to be a reasonable inference, that inference must " 'not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.' " (*People v. Morris* (1988) 46 Cal.3d 1, 21.) The testimony of a single witness may constitute substantial evidence to support a judgment, unless that testimony is physically impossible or inherently improbable. (*People v. Brown* (2014) 59 Cal.4th 86, 106; *Young*, at p. 1181.) Furthermore, our standard of review is the same in cases in which the prosecution relied primarily on circumstantial evidence. (*Young*, at p. 1175; *People v. Story* (2009) 45 Cal.4th 1282, 1296; *People v. Guerra* (2006) 37 Cal.4th 1067, 1129.) "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court[,] that must be convinced of the defendant's guilt beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053–1054.) "Simply put, if the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Farnam* (2002) 28 Cal.4th 107, 143 (*Farnam*).)

6

## II

### *Substantial Evidence to Support Judgment*

Tellechea contends that substantial evidence does not support his conviction of solicitation to commit perjury. In particular, he argues that there is insufficient evidence to support the jury's finding that he had the intent that Nick commit perjury when he solicited him to testify at his trial. Tellechea asserts there was substantial evidence to have supported a finding by the jury that he believed Nick was, in fact, present during the Rite Aid incident and therefore he had merely asked Nick to testify truthfully about what he had seen. He therefore argues there is insufficient evidence to support a finding by the jury that he had solicited false testimony by Nick and/or a finding that he had the intent to solicit Nick to commit perjury.

In support of his argument, Tellechea cites Caesar's testimony that when he was in the same jail cell, Nick had volunteered to Tellechea that he had been there during the Rite Aid incident and had described the incident to Tellechea. Caesar further testified that Tellechea gave Nick a piece of paper and had Nick draw a map of the Rite Aid area.

However, in so arguing, Tellechea misapplies the substantial evidence standard of review. Applying that standard, we review the entire record in the light most favorable to the judgment and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. (*Young, supra*, 34 Cal.4th at p. 1180.) In so doing, we do not reweigh the evidence or redetermine the credibility of witnesses and we make all reasonable inferences favorably to support the judgment. (*Covarrubias, supra*, 1 Cal.5th at p. 890; *Ochoa, supra*, 6 Cal.4th at p. 1206.) Therefore, the fact that there may be substantial evidence that could have supported an alternative and/or contrary finding by the trier of fact does *not* show

7

substantial evidence does not support the finding actually made by the trier of fact. (*Farnam, supra*, 28 Cal.4th at p. 143.) Here, by citing evidence, such as Caesar's testimony, and inferences from the evidence that are favorable to his position that he did not solicit Nick to commit perjury, Tellechea has *not* carried his burden on appeal to show that substantial evidence does not support the jury's finding that he solicited Nick to commit perjury within the meaning of section 653f, subdivision (a).

Applying the substantial evidence standard of review, we conclude, based on our review of the whole record, that substantial evidence supports the jury's verdict finding that Tellechea solicited Nick to commit perjury within the meaning of section 653f, subdivision (a). More specifically, there is substantial evidence to support the jury's finding, beyond a reasonable doubt, that when Tellechea solicited Nick to commit perjury, he had the intent that perjury be committed (i.e., that Nick testify under oath, willfully and contrary to the oath, that a material matter was true while knowing it to be false). (§§ 653f, subd. (a), 118, subd. (a); CALCRIM Nos. 441 & 2640; *Cabe, supra*, 63 Cal.App.4th at p. 735; *Howard, supra*, 17 Cal.App.4th at p. 1004.)

As discussed above, Nick testified at trial that Tellechea told him about the Rite Aid incident during which he and his brother fought with and hit a man inside the store. Nick further testified that Tellechea asked him to testify at his trial on the assault charge that he was present at the Rite Aid and witnessed the incident and testify that Tellechea and his brother did not do anything wrong. Tellechea drew a map showing where the incident occurred. He also wrote a script as to exactly what he wanted Nick's testimony to be. Tellechea gave Nick the map and script for his testimony. Photographs of both the map and script were admitted in evidence at trial. Nick read Tellechea's entire script for the jury. Nick testified that when

Tellechea gave him the map and script, he did not agree, and never intended, to testify on his behalf. Nick further testified that he was not present during the incident and was, in fact, in Tijuana that day.

We conclude that the jury could reasonably find Nick's trial testimony to be credible and that his testimony, as corroborated by Tellechea's script and map (exhs. 85 and 86), proved, beyond a reasonable doubt, that Tellechea solicited Nick to commit perjury within the meaning of section 653f, subdivision (a). In particular, the jury could reasonably infer that when Tellechea asked Nick to testify on his behalf, he knew Nick was *not*, in fact, present during the Rite Aid incident and therefore Nick could *not* truthfully testify under oath that he was present during the incident or describe the events in the manner Tellechea asked him to in the script he gave him. Because the jury could reasonably infer that Tellechea knew Nick could not truthfully so testify under oath, the jury could further reasonably infer that when Tellechea solicited Nick to commit perjury, he intended that perjury be committed. Accordingly, we conclude that substantial evidence supports Tellechea's conviction of solicitation to commit perjury (§ 653f, subd. (a)).

To the extent that Tellechea cites Caesar's testimony as support for a contrary finding by the jury, we conclude the jury could have reasonably found Caesar's testimony to be not credible. First, Caesar's testimony directly conflicted with Nick's testimony in many respects. In particular, Caesar testified that while in jail Nick volunteered to Tellechea that he was present at the Rite Aid, saw the incident, and described it to him. Caesar further testified that Tellechea then gave Nick a piece of paper and had Nick draw a map of the Rite Aid area. Contrary to Tellechea's assertion, Caesar's testimony was not uncontradicted. Rather, the jury could reasonably have found Nick's testimony credible and rejected Caesar's testimony as not

9

credible. Therefore, Tellechea's citation of Caesar's testimony does not show that substantial evidence does not support his conviction of solicitation to commit perjury. As discussed above, in applying the substantial evidence standard of review, we do not reweigh the evidence or redetermine the credibility of witnesses and we make all reasonable inferences favorably to support the judgment. (*Covarrubias, supra*, 1 Cal.5th at p. 890; *Ochoa, supra*, 6 Cal.4th at p. 1206.) Therefore, Tellechea's citation of Caesar's testimony or other evidence or inferences therefrom that could have supported an alternative and/or contrary finding by the trier of fact does *not* show that substantial evidence does not support the jury's finding that Tellechea was guilty of solicitation to commit perjury. (*Farnam, supra*, 28 Cal.4th at p. 143.)

Tellechea also cites the absence of testimony by Nick that when he asked Nick to testify that he was present during the Rite Aid incident, Nick did not tell him that he was not there. Tellechea argues that the absence of such express testimony by Nick supports an inference that he did not know Nick was not present during the incident. He argues he therefore did not know Nick could not testify truthfully in the manner he asked him to, thereby showing he did not have the requisite knowledge or intent when he asked Nick to testify on his behalf. However, despite the absence of that express testimony by Nick, we nevertheless conclude that the jury could reasonably infer from Nick's testimony, as corroborated by Tellechea's script and map (exhs. 85 and 86), that Tellechea, in fact, *knew* that Nick was *not* present during the Rite Aid incident and that Nick could *not* truthfully testify that he was present or describe the events as set forth in Tellechea's script, and therefore Tellechea had the requisite knowledge and intent when he solicited Nick to commit perjury. In particular, the jury could reasonably

10

infer that if Tellechea had, in fact, believed that Nick was present during the Rite Aid incident, Tellechea would have had no reason to draw a map and write a script for Nick's testimony on his behalf—presumably if Tellechea believed that Nick had been there, he would have already been familiar with the scene and what occurred during the incident. Therefore, the jury could reasonably infer that Tellechea, by drawing the map and writing the script and giving the map and script to Nick, knew Nick was not present at the scene and did not know what occurred during the incident when he solicited Nick to commit perjury. Therefore, Tellechea has not carried his burden on appeal to show that substantial evidence does not support his conviction of solicitation to commit perjury (§ 653f, subd. (a)).

DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.

11